**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| CHASTAN LAW, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KELLY & ASSOCIATES INSURANCE GROUP INC., D/B/A KELLY BENEFITS, and ACTALENT INC.,<br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Chastan Law ("Plaintiff"), on behalf of himself and all others similarly situated, states as follows for his class action complaint against Defendants, KELLY & ASSOCIATES INSURANCE GROUP INC., D/B/A KELLY BENEFITS, and ACTALENT INC., ("Defendants"):

## INTRODUCTION

1. Between December 12, 202 and December 17, 2024, Kelly Benefits discovered it had lost control over its computer network and the highly sensitive personal information stored on its computer network in a data breach perpetrated by cybercriminals ("Data Breach"). Upon information and belief, the Data Breach has impacted 413,000 of its customers and customers' current and former employees.[1]

2. Following an internal investigation, Kelly Benefits learned cybercriminals had gained unauthorized access to employees' personally identifiable information ("PII"), including but not limited to name, Social Security number, health and other insurance group ID number.

[1] The HIPAA journal, https://www.hipaajournal.com/kelly-benefits-data-breach/ (last visited May 12, 2025).

3. On or about April 21, 2025, over four months later, Defendants finally began notifying Class Members about the Data Breach ("Breach Notice"). A sample Breach Notice is attached as Exhibit A. Plaintiff's Breach notice is attached as Exhibit B.

4. Kelly Benefits is sending out notices on behalf of several impacted customers, including Actalent Inc., Allegis Group Inc. (the parent company of Actalent) ,and on information and belief, Amergis, Beam Benefits, Beltway Companies, CareFirst, The Guardian Life Insurance Company of America, Intercon Truck of Baltimore, Publishers Circulation Fulfilment, Quantum Real Estate Management, and Transforming Lives.[2]

5. These impacted customers, including Actalent Inc., chose to allow Kelly Benefits access and control over its employees' highly sensitive and personal information.

6. Upon information and belief, cybercriminals were able to breach Kelly Benefits systems because Defendants failed to adequately train their employees and agents on cybersecurity, failed to adequately monitor their agents, contractors, vendors, and suppliers in handling and securing the PII of Plaintiff, and failed to maintain reasonable security safeguards or protocols to protect the Class's PII—rendering it an easy target for cybercriminals.

7. Kelly Benefits' Breach Notice obfuscated the nature of the breach and the threat it posted—refusing to tell its victims how many people were impacted, how the breach happened, when it was discovered, or why Defendants delayed notifying victims that cybercriminals had gained access to their highly private information.

8. Defendants' failure to timely report the Data Breach made the victims vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to

---

[2] *Kelly Benefits Data Breach Impacts 260,000 People,* SECURITYWEEK, https://www.securityweek.com/kelly-benefits-data-breach-impacts-260000-people/ (last visited April 30, 2025).

prevent unauthorized use of their PII.

9. Defendants knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII misuse.

10. In failing to adequately protect employees' information, adequately notify them about the breach, and obfuscating the nature of the breach, Defendants violated state law and harmed thousands of current and former employees.

11. Plaintiff and the Class are victims of Defendants' negligence and inadequate cyber security measures. Specifically, Plaintiff and members of the proposed Class trusted Defendants with their PII. But Defendants betrayed that trust. Defendants failed to properly use up-to-date security practices to prevent the Data Breach.

12. Plaintiff is a former Actalent employee and Data Breach victim.

13. The exposure of one's PII to cybercriminals is a bell that cannot be unrung. Before the Data Breach, the private information of Plaintiff and the Class was exactly that—private. Not anymore. Now, their private information is permanently exposed and unsecure.

## PARTIES

14. Plaintiff, Chastan Law is a natural person and citizen of Oakland, California where he intends to remain.

15. Defendant, Kelly & Associates Insurance Group Inc., is a domestic Limited Liability Company with its principal place of business located at 1 Kelly Way, Sparks, Maryland 21152.

16. Defendant, Actalent Inc., is a company incorporated in Maryland, with its principal place of business located at 7301 Parkway Drive Hanover, Maryland, 21076.

## JURISDICTION & VENUE

17. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Plaintiff and Defendants are of different states. And there are over 100 putative Class members.

18. This Court has personal jurisdiction over Defendants because it is headquartered in Maryland, regularly conducts business in Maryland, and has sufficient minimum contacts in Maryland.

19. Venue is proper in this Court because Defendants' principal offices are in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

***Kelly Benefits***

20. Kelly Benefits is benefits administration company based in Maryland. Founded in 1976 as Francis X. Kelly Associates, Inc., Kelly Benefits officially became Kelly & Associates Insurance Group, Inc. in 1998. Kelly Benefits' services include consulting, brokerage, and administration services for employee benefits including online benefit administration, consolidated invoices, and compliance oversight programs for employers. In 2007, Kelly Benefits established Kelly Integral Solutions LLC as an umbrella management company for its various facets, including its benefits administration and technology, payroll, and benefits consulting offerings.[3]

21. Kelly Benefits services are specialized for corporations and companies who

[3] *Our History,* KELLY BENEFITS, https://kellybenefits.com/about/our-history/ (last visited April 30, 2025).

manage highly sensitive data. Kelly Benefits thus must oversee, manage, and protect the Sensitive Information of its customers' employees.

*22.* In other words, given the nature of benefits administration, Defendant accumulate highly private PII of its customers and customers' employees, including Plaintiff.

*23.* In collecting and maintaining the PII of its customers and customers' employees, Defendants agreed they would safeguard the data in accordance with state law and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their PII.

*24.* Kelly Benefits understood the need to protect the PII of its customers and customers' employees, and the need to prioritize its data security. Indeed, Kelly Benefits represented in its privacy policy that:

- "Your privacy, and the privacy of the information provided, is important to us. We use reasonable care to protect your data from loss, misuse, unauthorized access, disclosure, alteration and untimely destruction. We grant access to personal information about you only to our employees, agents, affiliates and service providers so they can provide you with the necessary online services and support."
- "Please be assured that the Site is equipped with security measures to protect the information you provide us."
- "The personal identifiable information that you provide to us via the Site will not be shared or transferred to unrelated third parties without your prior consent, unless it is required by law or judicial order, or directly related to the services requested."

- "Protecting the privacy of our clients and users of our Site is important."[4]

25. Despite recognizing its duty to do so, on information and belief, Kelly Benefits has not implemented reasonably cybersecurity safeguards or policies to protect customers and customers' employees PII or trained its IT or data security employees to prevent, detect, and stop breaches of its systems. As a result, Defendant leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to employees' PII.

***Actalent Inc.,***

26. Actalent touts itself to be a "global leader in engineering and science services and talent solutions".

*27.* Given the nature of benefits administration, Defendant accumulate highly private PII of its current and former employees, including Plaintiff.

*28.* In collecting and maintaining the PII of its current and former employees, Defendants agreed they would safeguard the data in accordance with state law and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their PII.

*29.* Indeed, Actalent promises in its Privacy Policy that it is "is committed to protecting the Personal Information you share with us" and "uses appropriate physical, technical, organizational and administrative security measures to help protect your Personal Information from unauthorized or unlawful access, use, or disclosure, and from accidental loss, destruction, or damage."[5]

30. Despite recognizing its duty to do so, on information and belief, Actalent has not

---

[4] *Privacy Policy,* KELLY BENEFITS, https://kellybenefits.com/privacy-policy/ (last visited April 30, 2025).

[5] Privacy Policy, Actalent, https://www.actalentservices.com/en/privacy-notice (last visited April 30, 2025).

implemented reasonably cybersecurity safeguards or policies to protect current and former employees PII or trained its IT or data security employees to prevent, detect, and stop breaches of its systems. As a result, Defendant leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to employees' PII.

***Defendants Failed to Safeguard Employees' PII***

31. Plaintiff is a former employee of Actalent and a data breach victim.

32. As a condition of employment with Actalent, Plaintiff provided Actalent with his PII, including but not limited to his name, Social Security number, and his health and insurance group ID number. Actalent used that PII to facilitate its employment of Plaintiff, including payroll, and required Plaintiff to provide that PII to obtain employment and payment for that employment.

33. On information and belief, Actalent provided Kelly Benefits with Plaintiff's PII as part of the administration services Kelly Benefits provided to Actalent. Thus, Kelly Benefits was granted access and custody of Plaintiff's PII including but not limited to his name, Social Security number, and his health and insurance group ID number.

34. On information and belief, Defendants collect and maintain customer employees' unencrypted PII in their computer systems.

35. In collecting and maintaining PII, Defendants implicitly agreed that they will safeguard the data using reasonable means according to state and federal law.

36. On information and belief, Kelly Benefits was subject to a data breach between December 12, 2024, until December 17, 2024. Following an internal investigation, Kelly Benefits discovered that its system "was subject to unauthorized access…and certain files were copied and taken." Ex. A.

37. In other words, Kelly Benefits' cyber and data security systems were completely inadequate in that it allowed cybercriminals to obtain files containing a treasure trove of thousands of its employees' highly sensitive PII.

38. Through their inadequate security practices, Defendants exposed Plaintiff's and the Class's PII for theft and sale on the dark web.

39. Despite its duties to safeguard PII, Defendants did not in fact follow industry standard practices in securing employees' and customer employees' PII, as evidenced by the Data Breach.

40. On or around April 21, 2025— over four months after the Breach was finally discovered— Defendants finally notified Class Members about the Data Breach.

41. In response to the Data Breach, Defendants contend that Kelly Benefits has or will be implementing "additional endpoint protections and resetting all internal passwords" Ex. B. Although Kelly Benefits fail to expand on what these alleged "additional endpoint protections" are, such protections should have been in place before the Data Breach.

42. Through its Breach Notice, Defendants recognized the actual imminent harm and injury that flowed from the Data Breach, so they encouraged breach victims to "remain vigilant against incidents of identity theft and fraud by reviewing your account statements and monitoring your free credit reports for suspicious activity and to detect errors." Ex. A.

43. On information and belief, Kelly Benefits has offered several months of complimentary credit monitoring services to victims, which does not adequately address the lifelong harm that victims will face following the Data Breach. Indeed, the breach involves PII that cannot be changed, such as Social Security numbers.

44. Even with several months of credit monitoring services, the risk of identity theft

and unauthorized use of Plaintiff's and Class Members' PII is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

45. Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's PII. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

46. On information and belief, Defendants failed to adequately train their IT and data security employees and agents on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over their employees' and customer employees' PII. Defendants' negligence is evidenced by their failure to prevent the Data Breach and stop cybercriminals from accessing the PII.

***The Data Breach was a Foreseeable Risk of Which Defendants were on Notice.***

47. It is well known that PII, including Social Security numbers, is an invaluable commodity and a frequent target of hackers.

48. In 2021, there were a record 1,862 data breaches, surpassing both 2020's total of 1,108 and the previous record of 1,506 set in 2017.[6]

49. In light of recent high profile data breaches, including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendants knew or should have known that their electronic records would be targeted by cybercriminals.

---

[6] Data breaches break record in 2021, CNET (Jan. 24, 2022), https://www.cnet.com/news/privacy/record-number-of-data-breaches-reported-in-2021-new-report-says/ (last accessed September 4, 2023).

50. Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.

51. Despite the prevalence of public announcements of data breach and data security compromises, and despite its own acknowledgments of data security compromises, and despite its own acknowledgment of its duties to keep PII private and secure, Defendants failed to take appropriate steps to protect the PII of Plaintiff and Class Members from being compromised.

52. In the years immediately preceding the Data Breach, Defendants knew or should have known that Defendants' computer systems were a target for cybersecurity attacks, including ransomware attacks involving data theft, because warnings were readily available and accessible via the internet.

53. In October 2019, the Federal Bureau of Investigation published online an article titled "High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations" that, among other things, warned that "[a]lthough state and local governments have been particularly visible targets for ransomware attacks, ransomware actors have also targeted health care organizations, industrial companies, and the transportation sector."[7]

54. In April 2020, ZDNet reported, in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year," that "[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized tools to maximize damage, leak corporate information on dark web portals, and even tip journalists to generate

---

[7] High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations, FBI, available at https://www.ic3.gov/Media/Y2019/PSA191002 (last accessed September 4, 2023).

negative news for companies as revenge against those who refuse to pay."[8]

55. In September 2020, the United States Cybersecurity and Infrastructure Security Agency published online a "Ransomware Guide" advising that "[m]alicious actors have adjusted their ransomware tactics over time to include pressuring victims for payment by threatening to release stolen data if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion."[9]

56. This readily available and accessible information confirms that, prior to the Data Breach, Defendants knew or should have known that (i) ransomware actors were targeting entities such as Defendants, (ii) ransomware gangs were ferociously aggressive in their pursuit of entities such as Defendants, (iii) ransomware gangs were leaking corporate information on dark web portals, and (iv) ransomware tactics included threatening to release stolen data.

57. In light of the information readily available and accessible on the internet before the Data Breach, Defendants, having elected to store the unencrypted PII of thousands of its current and former employes in an Internet-accessible environment, had reason to be on guard for the exfiltration of the PII and Defendants' type of business had cause to be particularly on guard against such an attack.

58. Before the Data Breach, Defendants knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' PII could be accessed, exfiltrated, and published as the result of a cyberattack. Notably, data breaches are prevalent in today's society therefore making the risk of experiencing a data breach entirely foreseeable to Defendants.

---

[8] Ransomware mentioned in 1,000+ SEC filings over the past year, ZDNet, https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/ (last accessed September 4, 2023).

[9] Ransomware Guide, U.S. CISA, https://www.cisa.gov/stopransomware/ransomware-guide (last accessed September 4, 2023).

59. Prior to the Data Breach, Defendants knew or should have known that it should have encrypted their employees' and customers' employees' Social Security numbers and other sensitive data elements within the PII to protect against their publication and misuse in the event of a cyberattack.

***Plaintiff's Experience and Injuries***

60. Plaintiff is a former employee of Actalent of and a data breach victim.

61. As a condition of employment with Actalent, Plaintiff provided Actalent with his PII, including but not limited to his name, Social Security number, and his health and insurance group ID number. Actalent used that PII to facilitate its employment of Plaintiff, including payroll, and required Plaintiff to provide that PII to obtain employment and payment for that employment.

62. On information and belief, Actalent provided Kelly Benefits with Plaintiff's PII as part of the management software Kelly Benefits provided to Actalent. Thus, Kelly Benefits was granted access and custody of Plaintiff's PII including but not limited to his name, Social Security number, and his health and insurance group ID number.

63. Plaintiff provided his PII to Defendants and trusted they would use reasonable measures to protect it according to state and federal law.

64. On information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

65. Defendants deprived Plaintiff of the earliest opportunity to guard himself against the Data Breach's effects by failing to promptly notify him about the Breach.

66. Plaintiff does not recall ever having his PII being impacted in a data breach except for Defendants' current breach.

67. As a result of its inadequate cybersecurity, Defendants exposed Plaintiff's PII for theft by cybercriminals and sale on the dark web.

68. Plaintiff suffered actual injury from the exposure of his PII —which violates his rights to privacy.

69. Plaintiff suffered actual injury in the form of damages to and diminution in the value of his PII. After all, PII is a form of intangible property—property that Defendants were required to adequately protect.

70. As a result of the Data Breach, Plaintiff has spent time and made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing credit card and financial account statements, changing his online account passwords, placing a credit freeze through all the three main credit bureaus, and monitoring Plaintiff's credit information.

71. Plaintiff has already spent and will continue to spend considerable time and effort monitoring his accounts to protect himself from identity theft. Plaintiff fears for his personal financial security and uncertainty over what PII was exposed in the Data Breach. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. Plaintiff is experiencing anxiety, distress, and fear regarding how this Data Breach, including the exposure and loss of his Social Security number, will impact his ability to do so. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

72. Plaintiff is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from his PII being placed in the hands of unauthorized third parties. This injury was worsened by Defendants' failure to inform Plaintiff about the Data Breach in a timely

fashion.

73. Indeed, following the Data Breach, Plaintiff began experiencing a significant increase in spam calls and texts, suggesting that his PII is now in the hands of cybercriminals.

74. Once an individual's PII is for sale and access on the dark web, as Plaintiff's PII is here as a result of the Breach, cybercriminals are able to use the stolen and compromised to gather and steal even more information.[10] On information and belief, the spam calls and texts Plaintiff is experiencing is a result of the Data Breach.

75. Plaintiff has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendants' possession, is protected and safeguarded from future breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

76. Plaintiff and members of the proposed Class have suffered injury from the misuse of their PII that can be directly traced to Defendants.

77. As a result of Defendants' failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. Plaintiff and the class have suffered or are at an increased risk of suffering:

a. The loss of the opportunity to control how their PII is used;

b. The diminution in value of their PII;

c. The compromise and continuing publication of their PII;

d. Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

[10] What do Hackers do with Stolen Information, Aura, https://www.aura.com/learn/what-do-hackers-do-with-stolen-information (last visited January 9, 2024).

e. Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f. Delay in receipt of tax refund monies;

g. Unauthorized use of stolen PII; and

h. The continued risk to their PII, which remains in the possession of Defendants and is subject to further breaches so long as Defendants fail to undertake the appropriate measures to protect the PII in its possession.

78. Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

79. The value of Plaintiff's and the proposed Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

80. Social Security numbers are particularly attractive targets for hackers because they can easily be used to perpetrate identity theft and other highly profitable types of fraud. Moreover, Social Security numbers are difficult to replace, as victims are unable to obtain a new number until the damage is done.

81. It can take victims years to spot identity or PII theft, giving criminals plenty of time to use that information for cash.

82. One such example of criminals using PII for profit is the development of "Fullz" packages.

83. Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

84. The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff's and the Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and the Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and members of the Class's stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

85. Defendants disclosed the PII of Plaintiff and members of the proposed Class for criminals to use in the conduct of criminal activity. Specifically, Defendants opened up, disclosed, and exposed the PII of Plaintiff and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII.

86. Defendants' failure to properly notify Plaintiff and the Class of the Data Breach

exacerbated Plaintiff's and the Class's injuries by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

***Consumers Prioritize Data Security***

87. In 2024, the technology and communications conglomerate Cisco published the results of its multi-year "Consumer Privacy Survey."[11] Therein, Cisco reported the following:

a. "For the past six years, Cisco has been tracking consumer trends across the privacy landscape. During this period, privacy has evolved from relative obscurity to a customer requirement with more than 75% of consumer respondents saying they won't purchase from an organization they don't trust with their data."[12]

b. "Privacy has become a critical element and enabler of customer trust, with 94% of organizations saying their customers would not buy from them if they did not protect data properly."[13]

c. 89% of consumers stated that "I care about data privacy."[14]

d. 83% of consumers declared that "I am willing to spend time and money to protect data" and that "I expect to pay more" for privacy.[15]

e. 51% of consumers revealed that "I have switched companies or providers over their data policies or data-sharing practices."[16]

---

[11] *Privacy Awareness: Consumers Taking Charge to Protect Personal*, CISCO, https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-consumer-privacy-report-2024.pdf (last visited April 30, 2025).
[12] *Id*. at 3.
[13] *Id*.
[14] *Id*. at 9.
[15] *Id*.
[16] *Id*.

f. 75% of consumers stated that "I will not purchase from organizations I don't trust with my data."[17]

***Defendants failed to adhere to FTC guidelines.***

88. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendants, should employ to protect against the unlawful exposure of PII.

89. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

a. protect the personal customer information that they keep;

b. properly dispose of personal information that is no longer needed;

c. encrypt information stored on computer networks;

d. understand their network's vulnerabilities; and

e. implement policies to correct security problems.

90. The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

91. The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

---

[17] *Id*. at 11.

92. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

93. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to employees' PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendants Failed to Follow Industry Standards***

94. Several best practices have been identified that—at a minimum—should be implemented by businesses like Defendants. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

95. Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

96. Upon information and belief, Defendants failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01,

PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04).

97. These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendants opened the door to the criminals—thereby causing the Data Breach.

## CLASS ACTION ALLEGATIONS

98. Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members:

99. The **Nationwide Class** that Plaintiff seeks to represent is defined as:

> **All individuals residing in the United States whose PII was compromised in Defendants' Data Breach, including all those who received notice of the breach.**

100. The **California Subclass** that Plaintiff seeks to represent is defined as:

> **All individuals residing in the state of California whose PII was compromised in Defendants' Data Breach, including all those who received notice of the breach.**

101. Excluded from the Class is Defendants, their agents, affiliates, parents, subsidiaries, any entity in which Defendants have a controlling interest, any of Defendants' officers or directors, any successors, and any Judge who adjudicates this case, including their staff and immediate family.

102. Plaintiff reserves the right to amend the class definition.

a. **Numerosity**. Plaintiff is representative of the Class, consisting of several thousand members, far too many to join in a single action;

b. **Ascertainability**. Members of the Class are readily identifiable from information in Defendants' possession, custody, and control;

c. **Typicality**. Plaintiff's claims are typical of class claims as each arises from the same Data Breach, the same alleged violations by Defendants, and the same unreasonable manner of notifying individuals about the Data Breach.

d. **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's interests. His interests do not conflict with the Class's interests, and he has retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

e. **Commonality**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for the Class. Indeed, it will be necessary to answer the following questions:

i. Whether Defendants have a duty to use reasonable care in safeguarding Plaintiff's and the Class's PII;

ii. Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

iii. Whether Defendants were negligent in maintaining, protecting, and securing PII;

iv. Whether Defendants breached contract promises to safeguard Plaintiff's and the Class's PII;

v. Whether Defendants took reasonable measures to determine the extent of the Data Breach after discovering it;

vi. Whether Defendants' Breach Notice was reasonable;

vii. Whether the Data Breach caused Plaintiff's and the Class's injuries;

viii. What the proper damages measure is; and

ix. Whether Plaintiff and the Class are entitled to damages, treble damages, or injunctive relief.

103. Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

**FIRST CLAIM FOR RELIEF**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

104. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

105. Plaintiff and the Class entrusted their PII to Defendants on the premise and with the understanding that Defendants would safeguard their PII, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

106. Defendants owed a duty of care to Plaintiff and Class Members because it was foreseeable that Defendants' failure—to use adequate data security in accordance with industry standards for data security—would compromise their PII in a data breach. And here, that foreseeable danger came to pass.

107. Defendants have full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Class could and would suffer if their PII was wrongfully disclosed.

108. Defendants owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendants knew or should have known would suffer injury-in-fact from Defendants' inadequate security practices. After all, Defendants actively sought and obtained Plaintiff and Class Members' PII.

109. Defendants owed—to Plaintiff and Class Members—at least the following duties

to:

a. exercise reasonable care in handling and using the PII in its care and custody;

b. implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

c. promptly detect attempts at unauthorized access;

d. notify Plaintiff and Class Members within a reasonable timeframe of any breach to the security of their PII.

110. Also, Defendants owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class Members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

111. Defendants also have a duty to exercise appropriate clearinghouse practices to remove PII it was no longer required to retain under applicable regulations.

112. Defendants knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

113. Defendants' duty to use reasonable security measures arose because of the special relationship that existed between Defendants and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendants with their confidential PII, a necessary part of obtaining services from Defendants.

114. The risk that unauthorized persons would attempt to gain access to the PII and

misuse it was foreseeable. Given that Defendants hold vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendants' databases containing the PII — whether by malware or otherwise.

115. PII is highly valuable, and Defendants knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff and Class Members' and the importance of exercising reasonable care in handling it.

116. Defendants improperly and inadequately safeguarded the PII of Plaintiffs and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

117. Defendants breached these duties as evidenced by the Data Breach.

118. Defendants acted with wanton and reckless disregard for the security and confidentiality of Plaintiff and Class Members' PII by:

a. disclosing and providing access to this information to third parties and

b. failing to properly supervise both the way the PII was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

119. Defendants breached their duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII of Plaintiff and Class Members which actually and proximately caused the Data Breach and Plaintiff and Class Members' injury.

120. Defendants further breached their duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and Class Members'

injuries-in-fact.

121. Defendants have admitted that the PII of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

122. As a direct and traceable result of Defendants' negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

123. Defendants' breach of their common-law duties to exercise reasonable care and their failures and negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendants' negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**SECOND CLAIM FOR RELIEF**
**Negligence *per se***
**(On Behalf of Plaintiff and the Class)**

124. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

125. Under the FTC Act, 15 U.S.C. § 45, Defendants had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff and Class Members' PII.

126. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect the PII entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the

basis of Defendants' duty to protect Plaintiff and the Class Members' sensitive PII.

127. Defendants breached their respective duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII.

128. Defendants violated their duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and amount of PII Defendants have collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

129. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

130. But for Defendants' wrongful and negligent breach of their duties owed, Plaintiff and Class Members would not have been injured.

131. The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that they were failing to meet their duties and that their breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

132. Defendants' various violations and their failure to comply with applicable laws and regulations constitutes negligence *per se*.

133. As a direct and proximate result of Defendants' negligence *per se*, Plaintiff and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**THIRD CLAIM FOR RELIEF**
**Breach of Implied Contract**
**(Against Defendant Actalent on Behalf of Plaintiff and the Class)**

134. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

135. Defendant offered to employ Plaintiff and members of the Class if, as a condition of that employment, Plaintiff and members of the Class provided Defendant with their PII.

136. In turn, Defendant agreed it would not disclose the PII it collects to unauthorized persons. Defendant also promised to safeguard employees' PII.

137. Plaintiff and the members of the Class accepted Defendant's offer by providing PII to Defendant in exchange for employment with Defendant.

138. Implicit in the parties' agreement was that Defendant would provide Plaintiff and members of the Class with prompt and adequate notice of all unauthorized access and/or theft of their PII.

139. Plaintiff and the members of the Class would not have entrusted their PII to Defendant in the absence of such an agreement with Defendant.

140. Defendant materially breached the contracts it had entered with Plaintiff and members of the Class by failing to safeguard such information and failing to notify them promptly of the intrusion into its computer systems that compromised such information. Defendant also breached the implied contracts with Plaintiff and members of the Class by:

a. Failing to properly safeguard and protect Plaintiff's and members of the Class's PII;

b. Failing to comply with industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement; and

c. Failing to ensure the confidentiality and integrity of electronic PII that Defendant created, received, maintained, and transmitted.

141. The damages sustained by Plaintiff and members of the Class as described above were the direct and proximate result of Defendant's material breaches of its agreement(s).

142. Plaintiff and members of the Class have performed under the relevant agreements, or such performance was waived by the conduct of Defendant.

143. The covenant of good faith and fair dealing is an element of every contract. All such contracts impose upon each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

144. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

145. Defendant failed to advise Plaintiff and members of the Class of the Data Breach promptly and sufficiently.

146. In these and other ways, Defendant violated its duty of good faith and fair dealing.

147. Plaintiff and members of the Class have sustained damages because of Defendant's breaches of its agreement, including breaches of it through violations of the covenant of good faith and fair dealing.

148. Plaintiff, on behalf of himself and the Class, seeks compensatory damages for

breach of implied contract, which includes the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

**FOURTH CLAIM FOR RELIEF**
**Breach of Contract**
**(Against Defendant Kelly Benefits on Behalf of Plaintiff and the Class)**

149. Defendant entered into various contracts with its customers, including engineering and science service companies, to provide its administration services to its customers.

150. These contracts are virtually identical to each other and were made expressly for the benefit of Plaintiff and the Class, as it was their confidential information that Defendant agreed to collect and protect through its services. Thus, the benefit of collection and protection of the PII belonging to Plaintiff and the Class were the direct and primary objective of the contracting parties.

151. Defendant knew that if it were to breach these contracts with its customers, the customers' employees, including Plaintiff and the Class, would be harmed by, among other things, fraudulent misuse of their PII.

152. Defendant breached its contracts with its customers when it failed to use reasonable data security measures that could have prevented the Data Breach and resulting compromise of Plaintiff's and Class Members' PII.

153. As reasonably foreseeable result of the breach, Plaintiff and the Class were harmed by Defendant's failure to use reasonable data security measures to store their PII, including but not limited to, the actual harm through the loss of their PII to cybercriminals.

154. Accordingly, Plaintiff and the Class are entitled to damages in an amount to be determined at trial, along with their costs and attorney fees incurred in this action.

**FIFTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On Behalf of the Plaintiff and the Class)**

155. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

156. This claim is plead in the alternative to the breach of contractual and breach of implied contractual duty claim.

157. Plaintiff and members of the Class conferred a benefit upon Defendants in the form of services through employment. Defendants also benefited from the receipt of Plaintiff's and the Class's PII, as this was used to facilitate their employment.

158. Defendants appreciated or had knowledge of the benefits conferred upon them by Plaintiff and members of the Class.

159. Under principals of equity and good conscience, Defendants should not be permitted to retain the full value of Plaintiff's and the proposed Class's services and their PII because Defendant failed to adequately protect their PII. Plaintiff and the proposed Class would not have provided their PII or worked for Defendants at the payrates they did had they known Defendants would not adequately protect their PII.

160. Defendants should be compelled to disgorge into a common fund to benefit Plaintiff and members of the Class all unlawful or inequitable proceeds received by it as a result of the conduct and Data Breach alleged here.

**SIXTH CLAIM FOR RELIEF**
**Invasion of Privacy**
**(On Behalf of the Plaintiff and the Class)**

161. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

162. Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

163. Defendants owed a duty to their employees and customers' employees, including Plaintiff and the Class, to keep this information confidential.

164. The unauthorized acquisition (i.e., theft) by a third party of Plaintiff's and Class Members' PII is highly offensive to a reasonable person.

165. The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class disclosed their sensitive and confidential information to Defendants as part of their employment, but they did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

166. The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

167. Defendants acted with a knowing state of mind when they permitted the Data Breach because they knew their information security practices were inadequate.

168. Defendants acted with a knowing state of mind when they failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

169. Acting with knowledge, Defendants had notice and knew that their inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

170. As a proximate result of Defendant's acts and omissions, the PII of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

171. Unless and until enjoined and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class

because their PII are still maintained by Defendants with their inadequate cybersecurity system and policies.

172. Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendants' continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendants' inability to safeguard the PII of Plaintiff and the Class.

173. In addition to injunctive relief, Plaintiff, on behalf of himself and the other members of the Class, also seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendants, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

**SEVENTH CLAIM FOR RELIEF**
**Breach of Fiduciary Duty**
**(On Behalf of the Plaintiff and the Class)**

174. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

175. Given the relationship between Defendants and Plaintiff and Class members, where Defendants became guardian of Plaintiff's and Class members' PII, Defendants became a fiduciary by its undertaking and guardianship of the PII, to act primarily for Plaintiff and Class members, (1) for the safeguarding of Plaintiff's and Class members' PII; (2) to timely notify Plaintiff and Class members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendants did and does store.

176. Defendants have a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of Defendants' relationship with them—especially to secure their PII.

177. Because of the highly sensitive nature of the PII, Plaintiff and Class members would not have entrusted Defendants, or anyone in Defendants' position, to retain their PII had

they known the reality of Defendants' inadequate data security practices.

178. Defendants breached their fiduciary duties to Plaintiff and Class members by failing to sufficiently encrypt or otherwise protect Plaintiff's and Class members' PII.

179. Defendants also breached their fiduciary duties to Plaintiff and Class members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

180. As a direct and proximate result of Defendants breach of their fiduciary duties, Plaintiff and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**EIGTH CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law ("UCL")**
**Cal Bus. & Prof. Code § 17200, *et seq*.**
**(On Behalf of the Plaintiff and the California Subclass)**

181. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

182. Defendants engaged in unlawful and unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*. which prohibits unlawful, unfair, or fraudulent business acts or practices ("UCL").

183. Defendants' conduct is unlawful because it violates the California Consumer Privacy Act of 2018, Civ. Code § 1798.100, *et seq*. (the "CCPA"), and other state data security laws.

184. Defendants stored the PII of Plaintiff and the Class in its computer systems and knew or should have known it did not employ reasonable, industry standard, and appropriate security measures that complied with applicable regulations and that would have kept Plaintiff's and the Class's PII secure so as to prevent the loss or misuse of that PII.

185. Defendants failed to disclose to Plaintiff and the Class that their PII was not secure. However, Plaintiff and the Class were entitled to assume, and did assume, that

Defendants had secured their PII. At no time were Plaintiff and the Class on notice that their PII was not secure, which Defendants had a duty to disclose.

186. Defendants also violated California Civil Code § 1798.150 by failing to implement and maintain reasonable security procedures and practices, resulting in an unauthorized access and exfiltration, theft, or disclosure of Plaintiff's and the Class's nonencrypted and nonredacted PII.

187. Had Defendants complied with these requirements, Plaintiff and the Class would not have suffered the damages related to the data breach.

188. Defendants' conduct was unlawful, in that it violated the CCPA.

189. Defendants' acts, omissions, and misrepresentations as alleged herein were unlawful and in violation of, inter alia, Section 5(a) of the Federal Trade Commission Act.

190. Defendants' conduct was also unfair, in that it violated a clear legislative policy in favor of protecting consumers from data breaches.

191. Defendants' conduct is an unfair business practice under the UCL because it was immoral, unethical, oppressive, and unscrupulous and caused substantial harm. This conduct includes employing unreasonable and inadequate data security despite its business model of actively collecting PII.

192. Defendants also engaged in unfair business practices under the "tethering test." Its actions and omissions, as described above, violated fundamental public policies expressed by the California Legislature. *See*, e.g., Cal. Civ. Code § 1798.1 ("The Legislature declares that . . . all individuals have a right of privacy in information pertaining to them . . . The increasing use of computers . . . has greatly magnified the potential risk to individual privacy that can occur from the maintenance of personal information."); Cal. Civ. Code § 1798.81.5(a) ("It is the intent of the Legislature to ensure that personal information about California residents is protected."); Cal. Bus. & Prof. Code § 22578 ("It is the intent of the Legislature that this chapter [including the Online Privacy Protection Act] is a matter of statewide concern."). Defendants' acts and omissions thus amount to a violation of the law.

193. Instead, Defendants made the PII of Plaintiff and the Class accessible to scammers, identity thieves, and other malicious actors, subjecting Plaintiff and the Class to an impending risk of identity theft. Additionally, Defendants' conduct was unfair under the UCL because it violated the policies underlying the laws set out in the prior paragraph.

194. As a result of those unlawful and unfair business practices, Plaintiff and the Class suffered an injury-in-fact and have lost money or property.

195. The injuries to Plaintiff and the Class greatly outweigh any alleged countervailing benefit to consumers or competition under all of the circumstances.

196. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the misconduct alleged in this complaint.

197. Therefore, Plaintiff and the Class are entitled to equitable relief, including restitution of all monies paid to or received by Defendants; disgorgement of all profits accruing to Defendants because of their unfair and improper business practices; a permanent injunction enjoining Defendants' unlawful and unfair business activities; and any other equitable relief the Court deems proper.

**NINTH CLAIM FOR RELIEF**
**Violation of the California Customer Records Act**
**Cal. Civ. Code § 1798.80, et seq.**
**(On Behalf of the Plaintiff and the California Subclass)**

198. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

199. Under the California Customer Records Act, any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" must "disclose any breach of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82. The disclosure must "be made in the most expedient time possible and without unreasonable delay" but disclosure must occur

"immediately following discovery [of the breach], if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." *Id.*

200. The Data Breach constitutes a "breach of the security system" of Defendants.

201. An unauthorized person acquired the personal, unencrypted information of Plaintiff and the Class.

202. Defendants knew that an unauthorized person had acquired the personal, unencrypted information of Plaintiff and the Class but waited four months to notify them. Given the severity of the Data Breach, four months was an unreasonable delay.

203. Defendants' unreasonable delay prevented Plaintiff and the Class from taking appropriate measures from protecting themselves against harm.

204. Because Plaintiff and the Class were unable to protect themselves, they suffered incrementally increased damages that they would not have suffered with timelier notice.

205. Plaintiff and the Class are entitled to equitable relief and damages in an amount to be determined at trial.

**TENTH CLAIM FOR RELIEF**
**Violation of the California Consumer Privacy Act**
**Cal. Civ. Code § 1798.150**
**(On Behalf of Plaintiff and the California Subclass)**

206. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

207. Defendants violated California Civil Code § 1798.150 of the CCPA by failing to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the nonencrypted PII of Plaintiff and the Class. As a direct and proximate result, Plaintiff, and the Class's nonencrypted and nonredacted PII was subject to unauthorized access and exfiltration, theft, or disclosure.

208. Defendants are businesses organized for the profit and financial benefit of their owners according to California Civil Code § 1798.140, that collects the personal information of its members, and whose annual gross revenues exceed the threshold established by California Civil Code § 1798.140(d).

209. Plaintiff and Class Members seek injunctive or other equitable relief to ensure Defendants hereinafter adequately safeguards PII by implementing reasonable security procedures and practices. Such relief is particularly important because Defendants continues to hold PII, including Plaintiff's and Class members' PII. Plaintiff and Class members have an interest in ensuring that their PII is reasonably protected, and Defendants have demonstrated a pattern of failing to adequately safeguard this information.

210. Pursuant to California Civil Code § 1798.150(b), Plaintiff mailed a CCPA notice letter to Defendants' registered service agents, detailing the specific provisions of the CCPA that Defendants have violated and continues to violate. If Defendants cannot cure within 30 days—and Plaintiffs believe such cure is not possible under these facts and circumstances—then Plaintiffs intends to promptly amend this Complaint to seek statutory damages as permitted by the CCPA.

211. As described herein, an actual controversy has arisen and now exists as to whether Defendants implemented and maintained reasonable security procedures and practices appropriate to the nature of the information so as to protect the personal information under the CCPA.

212. A judicial determination of this issue is necessary and appropriate at this time under the circumstances to prevent further data breaches by Defendants.

## PRAYER FOR RELIEF

Plaintiff and members of the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B. Awarding declaratory and other equitable relief as is necessary to protect the

interests of Plaintiff and the Class;

C. Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

D. Enjoining Defendants from further deceptive practices and making untrue statements about the Data Breach and the stolen PII;

E. Awarding Plaintiff and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F. Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G. Awarding attorneys' fees and costs, as allowed by law;

H. Awarding prejudgment and post-judgment interest, as provided by law;

I. Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J. Granting such other or further relief as may be appropriate under the circumstances.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial for all claims so triable.

Dated: May 12, 2025

By: */s/ Duane O. King*

Duane O. King Fed Bar No: 19430
THE LAW OFFICES OF DUANE O. KING, PC
803 W. Broad St. Suite 210
Falls Church , VA 22046
Telephone (202)331-1963
Facsimile (202)449-8365
dking@dkinglaw.com

*/s/ Raina C. Borrelli .*
Raina C. Borrelli*
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com

**pro hac vice* forthcoming

*Attorneys for Plaintiff and the Proposed Class*